**AGASSIZ WEST CONDOMINIUM ASSOCIATION, Plaintiff and Appellant**

v.

**Judy SOLUM, Defendant and Appellee.**

Civ. No. 940184.

Supreme Court of North Dakota.

Feb. 8, 1995.

Gregory L. Thompson, Anderson & Bailly, Fargo, for plaintiff and appellant. Submitted on brief.

Timothy P. Hill, Bredahl Hill, P.C., Fargo, for defendant and appellee. Submitted on brief.

SANDSTROM, Justice.

Agassiz West Condominium Association appeals from a county court judgment awarding Judy Solum $505.70 in an offset of mutual judgments against the parties. We affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

## I

Agassiz consists of three, four-plex residential buildings in West Fargo which were converted into a condominium project on March 29, 1976. Under Agassiz's declaration and bylaws, its daily affairs are handled by a three-member Board of Managers comprised of one unit owner from each of the three buildings. The board is responsible for repairing and maintaining the common areas of the condominium, determining the common charges required for operation and maintenance of the condominium, and assessing and collecting from the unit owners the common charges and pro rata costs of property and flood insurance.

Solum has owned a unit in Agassiz for more than five years. In 1991 she failed to pay her pro rata share of property insurance for the condominium. In 1992 and 1993 she did not pay the board's monthly assessments for common charges, or her pro rata share of property and flood insurance. Agassiz sued Solum in small claims court to collect those unpaid amounts. Solum removed the action to county court and counterclaimed, claiming Agassiz had failed to make necessary repairs to the common areas of the building in which her unit was located and seeking damages.

At trial, Solum did not dispute she owed Agassiz $1,404.30 for common charges and her pro rata share of insurance through January 1994, and the trial proceeded on her counterclaim. The trial court found Agassiz had failed to maintain and repair the common areas of Solum's building, as required by its bylaws, and awarded Solum $1,910.00 on her counterclaim. The court offset the $1,910.00 award with a $1,404.30 award

against Solum for unpaid condominium fees, insurance assessments, and interest through January 1994, and a judgment of $505.70 was entered for Solum. Agassiz appeals.

The county court had jurisdiction under Art. VI, § 1, N.D. Const. and N.D.C.C. §§ 27–08.1–04 and 27–07.1–17. This court has jurisdiction under Art. VI, § 6, N.D. Const. and N.D.C.C. §§ 28–27–01 and 27–07.1–21. The appeal is timely under N.D.R.App.P. 4(a).

## II

Agassiz asserts the trial court erred in allowing Solum an offset for the estimated costs of repairs against her unpaid common charges. Agassiz contends all the buildings in the condominium project need repair, and, within its limited funds, it is doing its best to rank the upkeep and maintenance of the buildings. Agassiz argues neither its bylaws, nor North Dakota condominium law, authorizes a unit owner to withhold assessments for common charges in this situation.

### A

Our analysis of this issue begins with a brief description of the character of condominium ownership of real property. Under North Dakota law, a parcel of real property is submitted to a condominium project by recording a declaration in the office of the register of deeds. N.D.C.C. §§ 47–04.1–02, 47–04.1–03. The resulting "condominium" is "an estate in real property consisting of an undivided interest or interests in common in a portion of a parcel of real property together with a separate interest or interests in space in a structure, on such real property." N.D.C.C. § 47–04.1–01(1). A condominium combines two distinct forms of ownership of real property: (1) exclusive ownership of an individual unit of a multi-unit condominium project, and (2) ownership as a tenant in common of the common areas of the project, in proportion to each unit's interest in the total project. N.D.C.C. §§ 47–04.1–01(3), 47–04.1–01(4), and 47–04.1–06. See 4B Powell on Real Property, ¶ 632.1[4] (1993); 15A Am.Jur.2d, *Condominiums and Co-operative Apartments* § 1 (1976). The "common areas" include portions of the building outside the interior surfaces of the perimeter walls, bearing walls, floors, ceilings, windows and doors of the individual units. N.D.C.C. § 47–04.1–06.

The condominium form of ownership is thus based upon the principle of shared ownership and shared responsibility. *See* Hyatt, *Condominium and Homeowner Association Practice: Community Association Law* § 1.05(b)(1) (2d ed. 1988). Because of the manner in which ownership in a condominium is structured, each unit owner, in choosing to purchase a unit, must give up certain rights and privileges which normally accompany fee ownership of property and agree to subordinate those rights and privileges to the group's interest. *See Breene v. Plaza Tower Ass'n*, 310 N.W.2d 730, 733 (N.D.1981). A condominium project functions as a quasi-government, and under N.D.C.C. § 47–04.1–07(1), its unit owners are responsible for its administration. Section 47–04.1–07(1), N.D.C.C., authorizes the unit owners, or the administrative body established by the unit owners, to provide for bylaws for "the maintenance of common elements, limited common elements where applicable, assessment of expenses, payment of losses, division of profits, disposition of hazard insurance proceeds, and similar matters." When there has been a failure to comply with the condominium's bylaws, N.D.C.C. § 47–04.1–08 authorizes "an action to recover sums due for damages, injunctive relief or such other relief as a court of proper jurisdiction may provide by the administrative body or in a proper case, by an aggrieved unit owner."

Consistent with the condominium concept, under the declaration to submit Agassiz's property to a condominium project and its bylaws, the acceptance of a deed by each unit owner constitutes an acceptance of the terms of Agassiz's declaration, bylaws, and rules and regulations. Under Agassiz's bylaws, its affairs are governed by the board, which is responsible for all repairs and maintenance of the common elements and for the determination of the amount required for the operation, maintenance and the other affairs of the condominium, including the assessment of common expenses for repairs to common areas and the collection of the common charges

from the unit owners. All unit owners are obligated to pay the common charges assessed against their unit, and the board may take prompt action to collect any common charges which remain unpaid for more than thirty days after the due date, or to foreclose the lien for common expenses authorized by N.D.C.C. § 47–04.1–11.

■ Neither Agassiz's declaration and bylaws, nor chapter 47–04.1, N.D.C.C., authorizes a unit owner to withhold assessments for common charges for any reason. Under similar provisions, other courts have concluded individual unit owners may not withhold payment of common charges and assessments, because of disagreements over repairs to common areas. *Frisch v. Bellmarc Management, Inc.*, 190 A.D.2d 383, 597 N.Y.S.2d 962, 966 (N.Y.App.Div.1993); *Rivers Edge Condominium Association v. Rere, Inc.*, 390 Pa.Super. 196, 568 A.2d 261, 263 (Pa.Super.Ct.1990); *Pooser v. Lovett Square Townhomes*, 702 S.W.2d 226, 230–231 (Tex. Ct.App.1985); *see Newport West Condominium Association v. Veniar*, 134 Mich.App. 1, 350 N.W.2d 818, 821–823 (Mich.App.Ct.1984) (condominium owner not entitled to withhold condominium fees in response to dispute over association's alleged failure to provide audited financial records to co-owners and to maintain a proper reserve fund). *See generally* Hyatt at § 6.03(a). When Solum accepted the deed to her individual unit, she agreed to accept the terms of Agassiz's bylaws. We hold she was not entitled to withhold payment of common charges or her pro rata share for insurance, because of a dispute over repairs for common areas. We affirm the award of $1,404.30 to Agassiz for Solum's unpaid common charges.

B

■ Solum nevertheless argues the trial court did not err in awarding an offset, because the board refused to repair the common areas of the building in which her unit was located, as required by the bylaws.

Agassiz's bylaws make individual unit owners responsible for repairs to their unit, but do not authorize them to repair common areas. Instead, the bylaws provide, "[a]ll maintenance, repairs, and replacements to the common elements ... shall be made by the Board of Managers and be charged to all the unit owners as common expenses." The bylaws require the board to "at least annually, prepare a budget for the condominium, determine the amount of common charges required to meet the common expenses of the condominium, and allocate and assess such common charges against the unit owners according to their respective common interests." The bylaws also require the board to maintain an adequate reserve fund to provide for periodic maintenance, repair, and replacement of common elements.

Section 47–04.1–08, N.D.C.C., authorizes "an aggrieved unit owner" to bring an action for damages or injunctive relief for failure to comply with the condominium's bylaws. Although a unit owner may not withhold common charges in a dispute over repairs to common areas, other courts have recognized individual unit owners can sue a condominium association for failure to comply with its bylaws. *Posey v. Leavitt*, 229 Cal.App.3d 1236, 280 Cal.Rptr. 568, 574–75 (1991); *Scott v. Williams*, 607 S.W.2d 267, 271 (Tex.Civ. App.1980); *Newport West Condominium Association v. Veniar*, 350 N.W.2d at 823; *Rivers Edge Condo. Association v. Rere, Inc.*, 568 A.2d at 263–264. *See Collins v. Hayden on the Hudson Condominium*, 197 A.D.2d 482, 602 N.Y.S.2d 867, 868 (N.Y.App.Div. 1993).

Courts have also allowed unit owners to sue a condominium association for personal injuries sustained because of negligence relating to upkeep and maintenance of common areas. *White v. Cox*, 17 Cal.App.3d 824, 95 Cal.Rptr. 259, 263 (1971); *Schoondyke v. Heil, Heil, Smart & Golee, Inc.*, 89 Ill.App.3d 640, 44 Ill.Dec. 802, 806, 411 N.E.2d 1168, 1172 (1980); *Murphy v. Yacht Cove Homeowners Association*, 289 S.C. 367, 345 S.E.2d 709, 710 (1986). *See* Hyatt at § 6.03(n); Annot. 45 A.L.R.3d 1171, *Liability of Condominium Association or Corporation for Injury Allegedly Caused by Condition of Premises* (1972); Rubinstein & Walsh, 22 U.Rich.L.Rev. 127, *Little House of Horrors: May A Condominium Association Be Held Liable for Failure to Provide Adequate Secu-*

*rity or Maintenance in the Common Areas?* (1988); 15A Am.Jur.2d at § 58.

We hold N.D.C.C. § 47–04.1–08 allows a unit owner to sue the condominium association for failure to comply with the condominium's bylaws. However, we also recognize a condominium functions as a private, quasi-government, in which unit owners delegate decision-making authority to the board of managers. In reviewing a board's actions, some courts have applied the same business-judgment rule as is applied in a shareholder's derivative action to review actions of corporate directors. *Rywalt v. Writer Corp.*, 34 Colo.App. 334, 526 P.2d 316, 317 (Colo.Ct.App.1974); *Papalexiou v. Tower West Condominium,* 167 N.J.Super. 516, 401 A.2d 280, 286 (N.J.Sup.Ct.Ch.Div.1979); *Frisch v. Bellmarc Management, Inc.*, 597 N.Y.S.2d at 966; *Schoninger v. Yardarm Beach Homeowners,* 134 A.D.2d 1, 523 N.Y.S.2d 523, 528 (N.Y.App.Div.1987); *Schwarzmann v. Association of Apartment Owners of Bridgehaven,* 33 Wash.App. 397, 655 P.2d 1177, 1180–1181 (Wash.Ct.App. 1982). *See* Hyatt at § 6.02(a); Note, Judicial Review of Condominium Rulemaking, 94 Harv.L.Rev. 647 (1981). The business-judgment rule has been applied to a condominium board's choice of decisions about repairs to common areas. *Schoninger,* 523 N.Y.S.2d at 528; *see Papalexiou,* 401 A.2d at 286–87.

Under the business-judgment rule, "where a challenge is made by an individual owner to an action of a condominium board ..., absent claims of fraud, self-dealing, unconscionability or other misconduct, the court should apply the business-judgment rule and should limit its inquiry to whether the [board's] action was authorized and whether it was taken in good faith and in furtherance of the legitimate interests of the condominium." *Schoninger,* 523 N.Y.S.2d at 529. *See* Note, Judicial Review of Condominium Rulemaking, 94 Harv.L.Rev. at 663. *See also Levandusky v. One Fifth Avenue Apartment Corp.,* 75 N.Y.2d 530, 554 N.Y.S.2d 807, 811, 553 N.E.2d 1317, 1321 (N.Y.1990) (applying business-judgment rule to actions by board of directors of residential cooperative apartment). We have applied the business-judgment rule to decisions by the board of directors of a Rural Electric Cooperative. *Lill v. Cavalier Rural Electric Co-op.,* 456 N.W.2d 527, 530 (N.D.1990) citing *Levandusky.* We hold the business-judgment rule applies to a board's actions regarding repairs to the common areas of a condominium.

Although the trial court did not specifically cite the business-judgment rule to this case, it found:

"5. The Plaintiff condominium association has maintained artificially low condominium fees in the amount of $30 per month. These fees have not provided sufficient monies to make the repairs necessary to the condominium complex which is in excess of 20 years old. As a result of the neglect of these units by the board of managers, the Defendant's unit suffers from a leaky roof, interior water damage and warped exterior siding. In addition, the Defendant's unit may be a potential fire hazard due to soaked insulation and wet electrical wiring.

"6. Although the Plaintiff association has recently held a meeting to discuss the situation, no concrete plans are in place to either raise the condominium fee to an appropriate level or to undertake repair to the condominium units.

"7. As a result of the Plaintiff's failure to make necessary repairs to the Defendant's unit as required by the bylaws, the Defendant has suffered damages in an amount of $1,910 for roof repairs, siding repair, and fixing water damage. There is an additional unknown amount that would be required to repair the damaged insulation and any damage to the electrical system."

This record and the trial court's findings show the board has failed to make definite plans for necessary repairs to the common areas in Solum's building, and its failure posed serious, potential dangers for the condominium residents. Agassiz's bylaws affirmatively require the board to make repairs to common areas, and under the business-judgment rule and the trial court's findings, the board's inaction was not authorized and was a breach of its duty. *Compare Schoninger,* 523 N.Y.S.2d at 529 (board's choice

between two plans for repair of common area and implementation of one plan governed by business-judgment rule).

Here, however, because of the board's failure to repair common areas, the trial court awarded Solum damages for her estimated costs of repairs. Agassiz's bylaws do not authorize unit owners to individually repair common areas, or to directly pay for those repairs themselves. Instead, the bylaws require assessment of a pro rata common charge among all unit owners for repairs to common areas. Under Agassiz's bylaws, the costs of repairs for common areas are common expenses to be born on a prorated basis by all the unit owners, in the form of common charges.[1] *See Dutcher v. Owens*, 647 S.W.2d 948, 951 (Tex.1983) (tort liability of individual unit owner for injuries occurring on common areas is limited to pro rata interest in the project as a whole). We conclude the trial court erred in granting Solum an offset for the estimated costs of repairs to the common areas of her building.

 Part of the trial court's award, however, was for damages to the interior surfaces of walls in Solum's unit. The interior surfaces of the perimeter walls, bearing walls, floors and ceilings of the individual units are not common areas, N.D.C.C. § 47–04.1–06, and Agassiz's unit owners are individually responsible for repairs to those areas of their unit. To the extent damages to the interior walls of Solum's unit are attributable to the board's failure to repair the common areas, they are also common expenses to be paid for through common charges. The trial court may properly award Solum damages for repairs to the interior surfaces of walls in her unit. We reverse the part of the judgment awarding Solum an offset for repairs to the common areas, and we remand for a determination of damages for repairs to the interior surfaces of walls of Solum's unit.

### C

We also recognize other courts have sustained injunctive relief to compel compliance with a condominium bylaw requiring a board to make repairs to common areas. *Collins*, 602 N.Y.S.2d at 868; *Scott*, 607 S.W.2d at 271. *See Rivers Edge*, 568 A.2d at 263–64.

When the county court decided this case, its authority to award specific performance was limited. *South Forks Shopping Ctr. v. Dastmalchi*, 446 N.W.2d 440, 443 (N.D.1989). Effective January 1, 1995, county courts have been abolished and all unfinished business of each county court is considered unfinished business of the district court of the judicial district in which the county court was located. N.D.C.C. § 27–05–00.1. District courts have jurisdiction to award specific performance under N.D.C.C. § 27–05–06. Although an individual damage award to Solum because of the board's failure to repair common areas was not authorized by Agassiz's bylaws, we conclude a remand is necessary to consider if injunctive relief is now appropriate.

### III

We affirm the part of the judgment awarding Agassiz judgment for Solum's unpaid common charges, reverse the part of the judgment awarding Solum an offset for repairs to the common areas, and we remand for further proceedings consistent with this opinion.

VANDE WALLE, C.J., and NEUMANN, LEVINE and MESCHKE, JJ., concur.

---

1. While this lawsuit was pending, Agassiz held an owner's meeting where some owners "expressed a need for each individual to be responsible for their own costs for the big projects." Any informal agreement for the owners to be responsible for their own costs of repairs for common areas is contrary to the specific procedures for amending Agassiz's bylaws. *See Pepe v. Whispering Sands Condominium Association*, 351 So.2d 755, 758 (Fla.Dist.Ct.App.1977) (condominium declaration cannot be amended by straw vote, but must be amended by appropriate procedures).